(731 P.2d 316)

No. 59,303

VALLEY VIEW STATE BANK, *Appellee*, v. CALVIN L. CAULFIELD and MARTHA L. CAULFIELD, *Appellants*.

Rev. granted April 3, 1987.

Opinion filed January 15, 1987.

*John A. Holtmann,* of Elliott & Holtmann, of Overland Park, for the appellants.

*J. Stewart McWilliams,* of Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., of Overland Park, for the appellee.

Before ABBOTT, C.J., HARRY G. MILLER, District Judge Retired, assigned, and JAMES J. NOONE, District Judge Retired, assigned.

ABBOTT, C.J.: This is an appeal by Calvin L. and Martha L. Caulfield from a judgment denying their setoffs in a mortgage foreclosure action. The Caulfields claim they are entitled to certain refunds and penalties as setoffs to their obligation to Valley View State Bank because of alleged violations of the Uniform Consumer Credit Code (UCCC) by Valley View.

The salient facts can be highly summarized in this case. The Caulfields executed a series of mortgages to Valley View from 1977 through 1980. As many as forty-seven notes were executed over the years, culminating in a single note of $90,000.

Valley View filed a mortgage foreclosure action in 1984. The Caulfields raised several defenses and, in addition, claimed they were entitled to setoffs to their obligation, and to attorney fees, based on some sixteen alleged violations of the UCCC. All of the alleged violations are time-barred by K.S.A. 16a-5-201.

The issue is whether K.S.A. 16a-5-202 applies under the facts of this case. If so, the Caulfields are entitled to certain setoffs despite the fact the alleged violations are time-barred.

K.S.A. 16a-5-502 provides as follows:

"Refunds or penalties to which the consumer is entitled pursuant to this part may be set off against the *consumer's obligation*, and may be raised as a defense to a suit on the *obligation* without regard to the time limitations prescribed by this part." (Emphasis supplied.)

In a pretrial order the parties stipulated that the Caulfields had defaulted on the $90,000 promissory note and that the note was secured by five previous real estate mortgages. The parties further stipulated that the Bank was entitled, pursuant to the terms of the note and mortgages, to foreclose these mortgages to satisfy the defendants' indebtedness.

The trial court heard Valley View's motion for partial summary judgment on the issue of whether the Caulfields could, pursuant to 16a-5-202, assert as defenses or counterclaims prior UCCC violations which occurred on notes other than the $90,000 note. The trial court granted summary judgment to Valley View. The court found, as a matter of law, that "the statutory construction of the legal definition of the term obligation as used in K.S.A. 16a-5-202 refers to the note or contract on which suit was brought, and further, there is no statutory provision which would allow a defendant to rely on previous obligations of the Defendant to the Plaintiff which are no longer in existence and the statutory time for bringing such claims has passed."

What was the legislative intent in adopting K.S.A. 16a-5-202, and did it intend "obligation" to include prior notes?

The word "obligation" has a variety of meanings, depending on the context in which it is used. It is derived from the Latin word "obligatio," which corresponds nearly to the word "contract." Black's Law Dictionary 968 (5th ed. 1979). "An obligation or debt may exist by reason of a judgment as well as an express contract, in either case there being a legal duty on the part of the one bound to comply with the promise." Black's Law Dictionary 969 (5th ed. 1979). Webster's Third New International Dictionary 1556 (1976) defines "obligation" as "an act of obligating oneself to a course of action: a putting under a promise, vow or oath, . . . a formal and binding agreement or acknowledgment of a liability to pay a specified sum or do a specified thing"; synonymous with duty and debt. The word "obligate" is defined as "to constrain or bind to some course of action." Webster's Third New International Dictionary 1556 (1976).

Of significance is the Official Kansas Comment to 16a-5-201, which states in pertinent part:

"Given its strong minimum civil penalty approach, this subsection also provides for a relatively short statute of limitations: one year after the last installment is due under a closed-end contract and two years after the violation occurs under open-end credit."

Without 16a-5-202, a creditor who had committed a violation could wait one year under the closed-end contract, and two years under open-end credit, and commence an action and not be concerned with any violations. K.S.A. 16a-5-202 prevents that from occurring, and we are of the opinion that is all the legislature intended 16a-5-202 to accomplish. Had the legislature desired to include prior notes and prior agreements, we believe it would have been more precise in doing so.

The legislature is aware that most farmers and small businesses in this state are financed much as Valley View financed the Caulfields: that is, one or more real estate mortgages is filed of record, authorizing renewal notes or future advances, and the bank finances the farm operator or business without the added expense of filing a new mortgage for each transaction. The borrower, who pays the cost of filing mortgages and obtaining title (loan) opinions, benefits immensely from this method of financing. We do not believe the legislature intended a debtor to litigate as a setoff all notes that had ever been given on a mortgage. In this case, as many as 47 notes were given. Obviously, this is a small number in comparison to many other similar financing operations.

There is only *one* note evidencing *one* debt which Valley View is suing on. The fact that this final note is the culmination of several notes does not change its status. The parties bargained for this arrangement. The Caulfields benefited from this arrangement in that they were able to extend the period of time when payment was due from them without continually incurring added expense.

We deem it insignificant whether the $90,000 note is viewed as a renewal note or as a consolidated note. It is still *one note.* The Caulfields no longer have several outstanding debts which they are obligated to pay; instead, they have only one debt as evidenced by the note in question. The $90,000 note is valid and is the "consumer's obligation." It is the only *obligation* the

Caulfields have that is the subject of the lawsuit, and the only obligation that is enforceable. The trial court did not err in so holding.

Affirmed.